FEDERAL MUTUAL INSURANCE COM-
PANY, Plaintiff-Respondent,

v.

Milton CARPENTER, Successor of Mount
Etna Morris, as State Treasurer of
Missouri, Defendant-Appellant.

No. 49874.

Supreme Court of Missouri,

Division No. 2.

Nov. 11, 1963.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Benjamin J. Francka, Sp. Asst. Atty. Gen., Springfield, for defendant-appellant.

Glenn A. Burkart, Mann, Walter, Powell, Burkart & Weathers, Springfield, for respondent.

BARRETT, Commissioner.

This action for a declaratory judgment arose in these circumstances: In September 1956, Paddy Miles was employed by Lloyd Brooks, an employer subject to the workmen's compensation law. Brooks' liability under the law was insured in the plaintiff's predecessor American Farmers Mutual Insurance Company. On September 11, 1956, Paddy sustained an accidental injury arising out of and in the course of his employment by Brooks and in November 1957 a referee of the Division of Workmen's Compensation made separate "Findings of Fact" and an "Award on Hearing." In his findings of fact the referee found,

as stated, that Paddy had sustained a compensable accidental injury while working for Brooks. The referee further found that Paddy had sustained "a prior disability to the exent of fifty (50) per cent to the body as a whole" and that by reason of the accidental injury of September "together with the prior disability, the employee is permanently and totally disabled." Therefore, under the provisions of the workmen's compensation law, being totally and permanently disabled, Paddy was entitled to compensation benefits of 66⅔% of his average weekly earnings for 300 weeks and thereafter to 40% of his average weekly earnings for life. RSMo 1959, Sec. 287.200, V.A.M.S. And "(i)n addition to all other compensation" he was entitled to have medical, surgical and hospital treatment furnished. RSMo 1959, Sec. 287.140, V.A.M.S. Since the referee found that Paddy had suffered a prior disability to the extent of 50% of the body as a whole and that his September 1956 injury rendered him totally and permanently disabled, the referee awarded him 200 weeks' compensation at $35 a week from his employer and $35 a week for 100 weeks from the second injury fund and thereafter $17.60 a week for the remainder of his life also from the second injury fund. RSMo 1959, Secs. 287.200, 287.220, V.A. M.S. As to medical, surgical and hospital treatment the referee, partially in the language of the statute, made this finding of fact and ruling of law: "The employer and insurer shall provide employee with such medical, surgical and hospital treatment as may be necessary to cure and relieve him from the effects of his injuries." RSMo 1959, Sec. 287.140 V.A.M.S. These are the only facts in the record as to Paddy's employment, injuries, claim for compensation and the award by the referee.

In this action for a declaratory judgment instituted in August 1960 by Brooks' compensation insurer these additional facts appear: Brooks' insurer has paid Paddy 200 weeks' compensation at $35 a week and during that period has furnished the necessary medical attention. It is now asserted that as to future medical payments the referee's award is ambiguous, that the State Treasurer as custodian of the second injury fund asserts that the plaintiff, Brooks' insurer, is obligated to furnish Paddy's necessary future medical treatment. On the other hand, the employer's insurer asserts that in addition to the second injury fund's payments of 66⅔% of Paddy's weekly wages for 100 weeks and thereafter 40% of his wages for life, it is also obligated to pay his medical expense. As indicated, in these circumstances and because of the alleged ambiguity in the referee's award as to medical expense it is said that a justiciable controversy exists within the meaning of the declaratory judgment act.

Upon the hearing and submission of this the declaratory judgment action the circuit court found the facts as they have been outlined in this opinion. In addition the court found and concluded as a matter of law that in so far as the referee's award concerned medical expense it was ambiguous. The court then construed the applicable statutes and found that after its payment of compensation and medical expense for 200 weeks the employer's insurer was no longer obligated to pay medical expense. The court found and decreed therefore that after the expiration of the 200 weeks' compensation and medical expense the second injury fund was thereafter liable for all necessary future medical payments. It is from this final judgment in the declaratory judgment action that the State Treasurer of Missouri has appealed.

■■■ The parties have briefed and argued whether the referee's 1956 award with respect to medical treatment is ambiguous, whether, since there was no application for review or an appeal, his award became final and is therefore not subject to attack in this collateral proceeding. In support of these claims and the question of the circuit court's jurisdiction in this action the parties have cited lists of cases construing judgments and statutes, res judicata and kindred matters. It is not necessary,

however, to consider these auxiliary rules of construction, it is sufficient to say that the awards and findings of workmen's compensation referees are to be construed as a whole (100 C.J.S. Workmen's Compensation §§ 636–637, pp. 935, 942), that their unappealed, unambiguous awards are res judicata and are not subject to collateral attack, as in a suit for declaratory relief. RSMo 1959, Sec. 287.490, V.A.M.S.; 100 C.J.S. Workmen's Compensation §§ 655–659, pp. 982, 997; Crites v. Missouri Dry Dock & Repair Co., (Mo.App.) 348 S.W.2d 621. The problem here is not so much the adequacy or inadequacy of the referee's unappealed decision, had there been a bona fide complaint or lack of understanding on that score the parties undoubtedly would have availed themselves of the right of review and appeal. RSMo 1959, Secs. 287.480–287.-490, V.A.M.S. The essence of this case is whether in view of the applicable statutes and the circumstances of this record the employer-insurer or the second injury fund is obligated to furnish Paddy's future medical and hospital treatment.

 For their inferential bearing on the problem at hand it is well to note certain established general rules relating to the workmen's compensation law. In the absence of a special statute in some manner, for some specific reason, limiting or cutting down his liability the employer and his insurer are obligated by law to pay the totally and permanently injured employee the full compensation benefits of 66⅔% of weekly wages for 300 weeks and 40% of weekly earnings "for life." RSMo 1959, Sec. 287.-200, V.A.M.S. And this entire liability and this general rule is not affected by the fact that the employee may have had some physical handicap or the fact that he may have sustained a previous loss or permanent mutilation in some other employment resulting in partial disability. Annotations, 30 A.L.R. 979, 67 A.L.R. 794; 99 C.J.S. Workmen's Compensation § 298, p. 1047. The purpose of second injury fund legislation is to encourage the employment of the partially handicapped (2 Larson, Workmen's Com-

pensation, Sec. 59.31, p. 58) but it does not follow as a matter of course from the mere enactment of the legislation that the employer of the partially disabled is relieved of all obligations under the compensation law to an employee who in the course of his last employment becomes totally and permanently disabled. As stated, in the absence of an apportionment statute or second injury fund legislation, the employer is liable for the entire disability resulting from a compensable injury and this of course may include lifelong medical payments. 2 Larson, Workmen's Compensation, Sec. 61.14, p. 85.

It has been said that "the rendition of medical aid" is "a payment of compensation" (Parker v. St. Louis Car Co., (Mo. App.) 145 S.W.2d 482, 485), or that expenditures for medical aid and hospitalization "constitute payments of *compensation*" (Sommers v. Hartford Accident & Indemnity Co., (Mo.App.) 277 S.W.2d 645, 648) and in a manner of speaking that is true. Nevertheless provisions for compensation benefits and medical benefits are spelled out in separate statutes and the one governing medical benefits provides without limitation that *"In addition to all other compensation,* the employee shall receive and the employer shall provide such medical, surgical and hospital treatment * * * as may reasonably be required * * * to cure and relieve from the effects of the injury, and thereafter such additional similar treatment as the commission by special order may determine to be necessary." RSMo 1959, Sec. 287.140(1), V.A.M.S. But as indicated, these general principles are of only inferential force and it is believed that the legislative intention is fairly manifest from a consideration of the provisions of the relevant statutes.

It may be noted in passing that in some jurisdictions, New York for illustration, the second injury fund or comparable laws explicitly provide that the employer or insurer shall be reimbursed for "all compensation and medical benefits subsequent to those payable" for the first 104 weeks of disability. Matter of Mastrodonato v.

Pfaudler Co., 307 N.Y. 592, 123 N.E.2d. 83; Wason v. Moyer & Pratt, 274 App.Div. 313, 84 N.Y.S.2d 371. Admittedly, there is no such unambiguous statute in this jurisdiction.

■ The Missouri statutes, for the purpose of providing funds for the expense of administering the workmen's compensation law and "for the maintenance of the second injury fund," levy a 2% tax on the net premiums collected by insurance carriers for workmen's compensation coverage. RSMo 1959, Sec. 287.690, V.A.M.S. Nine-tenths of this tax is credited to the support of the Division of Workmen's Compensation, and one-tenth of the sum is credited to the second injury fund. RSMo 1959, Sec. 287.710(3), V.A.M.S. In certain contingencies there are provisions for partial abatement of the tax (Sec. 287.710(5)) and there are provisions for additional revenue not to exceed ¼ of 1% "of total compensation (including medical costs)" to be credited to the second injury fund. RSMo 1959, Sec. 287.715, V.A.M.S. In providing for abatement in certain eventualities Sec. 287.710(5) includes this statement: "To assure prompt compensation and medical attention due injured workers and to provide physical rehabilitation of such workers where it is indicated this specific statute shall prevail, any general law to the contrary notwithstanding."

While these statutes relating to taxes, their collection, distribution and abatement mention "medical attention" and "total compensation (including medical costs)," when it comes to the statutes creating the second injury fund and specifically apportioning compensation in applicable cases there is no mention of medical expense. In cases of permanent disability, "when there has been a previous disability," the employer at the time of the last injury is liable "only for the disability resulting from the last injury considered alone and of itself" and "the employee shall be paid the remainder of the compensation" out of the second injury fund and "special weekly benefits" in rehabilitation cases under Sec. 287.141. RSMo 1959, Sec. 287.200(1), V.A.M.S. The statute relating to medical benefits, although amended at the same time Sec. 287.220 was amended and the second injury fund created, does not provide in the case of total and permanent disability for apportionment of such expense and neither does it explicitly relieve the employer and insurer of any part of such expense. It is only in so far as the statute relates to the specific subject of rehabilitation that medical expense is mentioned. The medical expense statute provides that all fees and charges shall be reasonable and subject to regulation "by the commission, or the board of rehabilitation in rehabilitation cases" and "(t)he commission, or the board of rehabilitation in rehabilitation cases, shall also have jurisdiction to hear and determine all disputes as to such charges." RSMo 1959, Sec. 287.140(3), V.A.M.S. This is not a rehabilitation case but in the section of the statute creating the board of rehabilitation and giving the employee who seeks rehabilitation an additional $10 weekly benefit for 20 weeks from the second injury fund it is provided that the employer and insurer shall be entitled to credit for compensation paid the employee during the period of his physical rehabilitation "except for payments made out of the second injury fund, *and for liability under subsection 1 of section 287.140*" (the medical payment statute). And those provisions relating to rehabilitation provide that "*(a)s used in this section, the term physical rehabilitation shall be deemed to include medical, surgical and hospital treatment in the same respect as required to be furnished under subsection 1 of section 287.140.*" (Emphasis supplied.) RSMo 1959, Sec. 287.141(7) (8), V.A.M.S. The compellingly significant fact as to all these provisions is that they plainly demonstrate on the part of the legislature, as it created the second injury fund and correspondingly amended the compensation statutes, an acute awareness of medical expense and the incidence of its burdens. Since these provisions were enacted in full knowledge of the prior

statutory law and years of legislative experience with the compensation law, it would have been (and is now) an easy matter for the legislature to have specifically changed or relieved the employer and his insurer of the payment of medical benefits after the expiration of 200 weeks. Christy v. Petrus, 365 Mo. 1187, 1194, 295 S.W.2d 122, 127–128. In short, in cases within the second injury fund, there is no express provision relieving employers or their insurers from the obligation to pay medical expense to totally and permanently disabled employees and their release from that duty is not a fair implication upon consideration of all the statutes. In accordance with these views the judgment is reversed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.