## LOZIER CORPORATION AND LIBERTY MUTUAL INSURANCE COMPANY, APPELLEES, v. STATE OF NEBRASKA, SECOND INJURY FUND, APPELLANT, AND MICHAEL DECROIX, INTERVENOR-APPELLEE.

501 N.W.2d 313

Filed March 16, 1993.   No. A-92-222.

Don Stenberg, Attorney General, John R. Thompson, and David T. Bydalek for appellant.

Jay L. Welch, of Rickerson, Welch & Wulff, for appellees Lozier Corporation and Liberty Mutual Insurance Company.

Sheldon M. Gallner, of Gallner & Gallner, P.C., for

intervenor-appellee.

Sievers, Chief Judge, and Connolly and Wright, Judges.

Wright, Judge.

The State of Nebraska, Second Injury Fund (Fund), appeals the award on rehearing entered by the Workers' Compensation Court. The Fund assigns as error the compensation court's requiring the Fund to pay medical, hospital, and psychiatric care and treatment expenses incurred by Michael DeCroix. The Fund claims that the court erred in imposing on the Fund the responsibility for paying temporary total disability, except for the period of time DeCroix is undergoing vocational rehabilitation.

### STANDARD OF REVIEW

A decision by the Workers' Compensation Court after rehearing has the same force and effect as a jury verdict, and findings of fact will not be set aside unless, after reviewing the record in the light most favorable to the successful party, an appellate court determines that those findings are clearly erroneous. *Foreman v. State*, 240 Neb. 716, 483 N.W.2d 752 (1992); *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992).

An appellate court may modify, reverse, or set aside a Workers' Compensation Court's decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Kramer v. DeNoyer*, 240 Neb. 805, 484 N.W.2d 447 (1992); *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991).

In testing the sufficiency of evidence to support findings of fact made by the Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Hernandez v. Hawkins Constr. Co.*, 240 Neb. 129, 480 N.W.2d 424 (1992); *Wiese v. Becton-Dickinson Co., supra.*

## FACTS

On March 28, 1979, Michael DeCroix sustained a "degloving injury" to his right arm while employed by Lozier. Due to the extensive scarring, degeneration, and the underlying muscular damage and persistent stiffness, DeCroix was given a permanent partial disability rating of 60 percent to the right upper extremity. DeCroix returned to work for Lozier on April 13, 1981, following a 1-year rehabilitation.

On October 2, 1989, while employed at Lozier, DeCroix became disabled as a result of a repetitive motion injury to his left arm. As a result of this second accident and injury, DeCroix incurred medical and hospital expenses and was totally disabled from and including October 3, 1989, to and including September 25, 1990, when the extent of the permanent impairment of the injury to his left arm was ascertained, a period of $51^{1}/_{7}$ weeks. He thereafter sustained a 10-percent permanent partial disability to his left arm.

On November 6, 1990, Lozier and its insurance carrier, Liberty Mutual Insurance Company (both hereinafter Lozier), filed a petition in the Workers' Compensation Court against the State of Nebraska, Second Injury Fund (Fund), asserting that DeCroix's injury of October 1989, when considered alone, would not have caused his need for vocational rehabilitation and would not have been a hindrance or obstacle to his continued employment by Lozier.

Lozier asserted that if DeCroix has sustained either (1) total disability beyond his temporary total disability, (2) permanent disability in excess of 10 percent of his left upper arm, (3) a need for vocational rehabilitation, or (4) any combination of the foregoing, such circumstances were the result of the combined disabilities resulting from the first injury of March 28, 1979, and the second injury of October 2, 1989. Lozier asked the court to adjudicate the rights and duties of the parties.

After the single-judge hearing, the Fund filed for a rehearing. On rehearing, the court found that at the time of the accident of October 2, 1989, DeCroix was entitled to benefits of $245 per week for $51^{1}/_{7}$ weeks for temporary total disability, $245 per week for $22^{1}/_{2}$ weeks for the 10-percent permanent partial disability of the left arm, and $245 per week for so long

in the future as DeCroix remained permanently and totally disabled. The court found that DeCroix qualified for benefits from the Fund, as set forth in Neb. Rev. Stat. § 48-128 (Reissue 1988), and that DeCroix was permanently and totally disabled as a combined result of the injury to his left arm on October 2, 1989, and the previous permanent partial injury to his right arm on March 28, 1979.

The court imposed liability upon Lozier for the 10-percent permanent partial disability of the left arm for 22$^1$/$_2$ weeks and 51$^1$/$_7$ weeks for temporary total disability. From and after March 3, 1991, the Fund was required to pay DeCroix $245 per week for so long as he remained permanently and totally disabled. The court found that Lozier had paid to DeCroix $245 per week, commencing October 3, 1989, and continuing to the present, for which Lozier was entitled to credit for overpayment, and that Lozier should be reimbursed by the Fund to the extent of the overpayment. The court correctly apportioned the payments of the disability between Lozier and the Fund, and we affirm this portion of the award.

The court found that DeCroix was entitled to vocational rehabilitation, that he needed vocational rehabilitation in order to return to suitable employment, and that he would not have needed rehabilitation but for the accident of March 28, 1979. The Fund was ordered to pay temporary disability compensation to DeCroix if and when he participates in a rehabilitation plan. We find that the court was correct in this determination, and we also affirm this award.

The court found that DeCroix had suffered an exacerbation of a preexisting major depressive disorder as a result of the combined injuries, for which he received psychiatric treatment beginning July 15, 1991. The court found that the 1989 accident and injury, standing alone, would not have caused the need for this psychiatric treatment and ordered the Fund to provide and pay such future medical and hospital care and treatment as may be reasonably necessary as a result of said exacerbation. We reverse that portion of the award which requires the Fund to pay for the medical, hospital, and psychiatric care, for the reasons set forth below.

The court found that since the Fund had appealed and had

not obtained a reduction in the award, the Fund should pay $1,500 as attorney fees for rehearing, a witness fee of $300, and the court reporter fee for the deposition of the witness, as provided by Neb. Rev. Stat. § 48-125(2) (Supp. 1991). We reverse this portion of the award, for the reason that the Fund did obtain a reduction in the award, and therefore no attorney fees or costs should be paid by the Fund.

## LIABILITY FOR MEDICAL CARE

On rehearing, the Fund was ordered to continue to provide and pay for future medical and hospital care, including psychiatric treatment as may be reasonably necessary as a result of the exacerbation of DeCroix's condition from the two injuries. The Fund alleges that the Workers' Compensation Court erred in ruling that the Fund was liable for continued medical treatment. It claims the Fund is liable only for its apportioned share of disability payments and not for medical expenses.

Section 48-128 provides in part:

> [I]f the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.

The Fund contends that Nebraska law does not make it liable for the injured employee's medical expenses. We are asked by Lozier to extend this liability to the Fund for medical and hospital expenses, including psychiatric expenses, which are necessary and reasonable for DeCroix's health and rehabilitation. The question is not what compensation and benefits DeCroix should receive, but who shall pay for them. All parties assert that this is a case of first impression in Nebraska, and we believe they are correct.

"Compensation" has not been specifically defined by the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-101 et seq. (Reissue 1988 & Cum. Supp. 1992). The Nebraska Supreme Court on at least one recent occasion declined to adopt a uniform and constant meaning for "compensation," referring to "compensation" as a

chameleonlike word which gets its color of meaning from the context of the statute in which it is used. *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990). The court stated that "compensation" as used in § 48-125 does not mean medical expenses recoverable under the compensation act.

In other sections of the act, "compensation" is used to refer to the wages received by an employee. See §§ 48-121 and 48-122. Therefore, the scope of our review in this case will be whether, based upon § 48-128, the Workers' Compensation Court acted in excess of its powers by ordering the Fund to continue to provide and pay for such medical and hospital care and treatment, "including psychiatric treatment as may be reasonably necessary as a result of said exacerbation." The court found that the evidence showed that DeCroix had suffered an exacerbation of a preexisting major depressive disorder as a result of the combined injuries, for which he had received treatment since July 15, 1991, and that the evidence preponderated in favor of a finding that the accident and injury of October 2, 1989, standing alone and by itself, would not have caused this need for psychiatric treatment.

There are two principles which we must consider. The Second Injury Fund was created to encourage employers to hire the handicapped and to therefore be secure in knowing that if a work-related accident occurs, the employer and its insurance carrier are liable only for those injuries that would have resulted had there been no preexisting disability. *Parker v. St. Elizabeth Comm. Health Ctr.*, 226 Neb. 526, 412 N.W.2d 469 (1987). The second principle is that absent the statutory provisions of the Second Injury Fund, an employer would be liable for all of the injury. *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984), *overruled on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). As noted in *Benson*, the employee does not care who pays the benefits, because who pays makes no difference to the employee. Therefore, the rule that we should apply liberal construction for the beneficial purposes of the statute does not apply in this case, because benefits payable to the employee do not require a liberal construction of the statute.

We think the controlling principle is that in the event of a compensable injury, an employer is required to bear the cost for all workers' compensation benefits from the date of the injury, including all reasonable medical and hospital expenses caused by the injury. *Benson, supra.*

The exception to this requirement is the Second Injury Fund, § 48-128, which allows the employer of an injured employee to shift some of the liability for benefits for an injured employee to the Second Injury Fund. However, certain conditions, as set forth in § 48-128, must be met before the shift can occur. It is this shift of liability which is intended to encourage employers to hire those with preexisting disabilities.

The issue here is whether liability for future medical expenses is included within that which can be shifted from the employer to the Second Injury Fund in a proper case where the conditions for Second Injury Fund liability are otherwise satisfied. The Workers' Compensation Court held that medical expenses could be shifted. We disagree, because there is no statutory pronouncement whereby the Legislature has made payment of medical expenses by the Second Injury Fund part of the incentive for the employer to hire a previously handicapped worker. Section 48-128 limits the Fund's liability to "the additional disability" resulting from the combination of the preexisting condition and the present compensable injury.

If this interpretation of § 48-128 seems to provide insufficient incentive to foster the Fund's purpose of encouraging the employment of the handicapped, the situation is easily remedied by the Legislature and not by the court. Absent a specific statement in § 48-128 that medical and hospital expenses are "compensation," we decline to hold the Second Injury Fund liable for medical, hospital, and psychiatric expenses.

We are aided by the decision of the Missouri Supreme Court in *Federal Mutual Insurance Company v. Carpenter*, 371 S.W.2d 955 (Mo. 1963). The issue was whether, in view of applicable statutes and the facts of the case, the employer or the second injury fund was obligated to pay future medical and hospital expenses of the employee. The court recognized that prior cases had in certain circumstances found that medical aid

and hospitalization constituted payments of compensation. There are similar pronouncements in Nebraska. See, *Maxey v. Fremont Department of Utilities*, 220 Neb. 627, 371 N.W.2d 294 (1985); *Baade v. Omaha Flour Mills Co.*, 118 Neb. 445, 225 N.W. 117 (1929) (payments of medical and hospital expenses clearly constitute payments of compensation within the meaning of the compensation law); *Gourley v. City of Grand Island*, 168 Neb. 538, 96 N.W.2d 309 (1959) (providing of sick leave and treatment by a city physician constituted payment of compensation).

In *Carpenter*, the court pointed out that provisions for compensation benefits and medical benefits are described in separate statutes. The medical benefit statute, "RSMo 1959, Sec. 287.140, V.A.M.S.," requires the employer to provide such medical, surgical, and hospital treatment as is reasonably required. *Carpenter* 371 S.W.2d at 956. This is similar to § 48-120, which makes the employer liable for all reasonable medical and hospital services. As in Nebraska, in the absence of an apportionment statute or second injury fund legislation, the employer is liable for the entire disability resulting from a compensable injury.

*Carpenter* held that the second injury fund was not liable for medical expenses, reasoning that the legislature had created the second injury fund and was acutely aware of medical expenses and its burdens. It would have been an easy matter for the legislature to specifically relieve the employer of such a burden if it had chosen to do so.

In Nebraska, since there is no express provision in the Nebraska Workers' Compensation Act imposing the burden on the Fund or relieving employers of the burden to pay medical expenses, such release from liability cannot be implied, especially when § 48-120 requires the employer to pay such expenses. Absent plain statutory language which shifts the burden for medical, hospital, and psychiatric expenses to the Fund, an employer remains liable for such expenses, and we find that Lozier is liable for DeCroix's past, present, and future medical expenses. We reverse the Workers' Compensation Court's decision that holds the Fund liable for such expenses.

We do not find that the workers' compensation statutes

permit an award of attorney fees in the appeal to this court under the facts of this case. We therefore affirm in part the decision of the Workers' Compensation Court and reverse in part the decision, in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED.